IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LATISHA G., )
)
        Plaintiff, )
)
v. ) 1:22CV793
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Latisha G. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on November 20, 2019, alleging a disability onset date of January 1, 2019. (Tr. at 30, 186-89.)[2] Plaintiff's application was denied initially (Tr. at 79-92, 108-11) and upon reconsideration (Tr. at 93-107, 115-22). Thereafter,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 123-24.) On October 26, 2021, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 30.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 42), and on July 19, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 32.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> scoliosis, sciatica, obesity, and cervical dysplasia, migraines[.]

(Tr. at 32.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 33-34.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

> [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently, carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, stand for six hours in an eight-hour workday, walk for six hours in an eight-hour workday, and push and/or pull as much as she can lift and/or carry.

5

> [Plaintiff] can frequently reach overhead to the left and frequently reach overhead to the right. [She] can climb ladders, ropes, or scaffolds occasionally, stoop frequently, kneel frequently, crouch frequently, and crawl frequently. [She] can work at unprotected heights frequently, in vibration frequently, and in moderate noise.

(Tr. at 34.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff remained capable of performing past relevant work as a sales clerk and price marker. (Tr. at 40.) The ALJ also made an alternative finding at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy. (Tr. at 41-42.) Based on his determinations at steps four and five, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 42.)

Plaintiff now contends that the ALJ failed to "adequately account for the vocationally limiting effects of Plaintiff's migraine headaches" when assessing her RFC, despite having included migraines among Plaintiff's severe impairments at step two of the sequential analysis. (Pl.'s Br. [Doc. #11] at 4.) She notes that, although the ALJ "apparently accept[ed] [Plaintiff's] statements regarding noise to be true and limit[ed] her to work in an environment with no more than moderate noise," the ALJ omitted other limitations in the RFC which relate to her migraines, such as light avoidance, time off task, or absences. (Pl.'s Br. at 5.) As recounted in the administrative decision,

> [Plaintiff] testified that she experiences daily headaches as well as migraines that occur twice a week. She noted that her migraines are accompanied by sensitivity to both light and sound. She explained that when she experiences a migraine, she takes her medication and then lies down in a dark room to rest and sleep for approximately three to four hours.

6

(Tr. at 35) (internal citation to record omitted) (citing Tr. at 68-69). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. at 35.)

Plaintiff chiefly argues that the ALJ erred in finding Plaintiff's statements regarding the limiting effects of her headaches less than fully consistent with the medical evidence and other evidence of record. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Commissioner, Social Security, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4-5. SSR 16-3p recognizes that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence,

7

and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95 (internal brackets omitted). Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

(i) [Plaintiff's] daily activities;
(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, contrary to Plaintiff's assertions, the ALJ provided more than conclusory statements discounting Plaintiff's testimony. As instructed by the regulations, the ALJ considered the entire case record and explained his reasons for deviating from Plaintiff's statements regarding the impact of her symptoms on her ability to work. This explanation was provided throughout the ALJ's RFC discussion. For example, the ALJ considered at length Plaintiff's treatment records regarding her headaches. The ALJ first noted that the

8

treatment records reflect "new onset headaches" on May 29, 2020, related to Plaintiff's radiation treatments and high blood pressure. (Tr. at 37, 412.) The ALJ noted that the examination on May 29, 2020, showed "no focal neurological deficits, full orientation and alertness, equal sensation in all extremities, no strength deficit, normal gait, and normal coordination." (Tr. at 37, 412-13.) At that visit, Plaintiff's primary care provider, Richard Godine, PA, noted that Plaintiff was reporting headaches over the past two weeks, and he "treated [her] headaches routinely and conservatively with over-the-counter (OTC) Tylenol or Ibuprofen, [and] started [her] on propranolol for her high blood pressure and headaches." (Tr. at 37, 412-13.) PA Godine's note reflects that the headaches are "not intractable" and that "propranolol would be helpful." (Tr. at 413.) Notably, at a follow-up less than a week later, on June 3, 2020, Plaintiff reported that she was "feeling much better." (Tr. at 412.) The record reflects no mention of headaches until nearly a year later, on March 8, 2021, when Plaintiff similarly reported that her migraines had resolved so she was no longer taking the propranolol. (Tr. at 618.) As noted by the ALJ, at that visit, she was switched from Gabapentin to Lyrica for her back pain. (Tr. at 37, 618.) However, shortly thereafter, Plaintiff reported "some headaches" after switching from Gabapentin to Lyrica for back pain. (Tr. at 37, 613.) At her next visit a month later on April 15, 2021, Plaintiff reported a headache for the past 3 days, which the treatment note reflects as follows:

> She presents for evaluation of migraine-like headaches over the past 3-4 days. She describes the headaches as dull, throbbing pain behind the eyes and alternating temples. There is associated fatigue, photophobia, phonophobia and blurred vision. No nausea, vomiting, scotomas. She has been on propranolol in the past for prophylaxis and this was helpful. She [was] actually able to come off of it because her migraines abated. She has taken extra strength Tylenol, Advil 800 mg with temporary relief of [this] headache but nothing has been able to completely "knock in out."

9

(Tr. at 604.) In response, as noted by the ALJ, PA Godine switched Plaintiff back to Gabapentin rather than Lyrica, and prescribed Maxalt and Ibuprofen. (Tr. at 37, 605.) At the next visit a month later, on May 19, 2021, Plaintiff reported a migraine headache over the past 4 days, and reported that the Maxalt provided "temporary relief." (Tr. at 586.) Given the "persistent and worsening migraines" reflected in the treatment notes over the past 60 days, PA Godine concluded that she "[c]ould consider propranolol" for "migraine prophylaxis," and she was sent for evaluation by a neurologist. (Tr. at 587.) The neurologist, Dr. Leroy Seaux, noted a normal sleep study and prescribed Fiorinal for her headaches. (Tr. at 858, 885.)[5] As described by the ALJ:

> [Plaintiff] complained of migraine-type headaches, described as dull and throbbing pain behind the eyes and alternating temples and associated with fatigue, photophobia, phonophobia, blurred vision, nausea, vomiting, and scotomas. . . . [H]er neurological exam was within normal limits. Mr. Godine started [Plaintiff] on Maxalt (Rizatriptan). [Plaintiff] reported some temporary relief from the Maxalt, and her neurologic exam remained within normal limits. [Plaintiff] was referred to neurologist Leroy D. Seaux, M.D. for her headaches and difficulty sleeping. . . . A sleep study was negative for sleep apnea and she slept well throughout.

(Tr. at 38) (internal citations to record omitted). Based on this treatment record, the ALJ found that the record regarding her headache reflects routine and conservative treatment and improvement on medication. (Tr. at 37, 40.) This conclusion is supported by the record outlined above, showing treatment in May 2020, immediately improved with propranolol, with abatement of her migraines to the point that she discontinued propranolol, and with and no complaints in the record again until March 2021, following a change in medication, with notes

---

[5] At the hearing, Plaintiff repeatedly testified that she takes "Albuterol" to treat her migraines. (Tr. at 68.) However, a review of Plaintiff's medication list reveals that she likely confused albuterol with butalbital, a barbiturate prescribed to her for treatment of headaches, or Fiornal, the brand name for the same medication. (See Tr. at 885.)

reflecting additional medication adjustments in April and May 2021 and the option to re-start propranolol as well as prescriptions for Maxalt and Fiorinal.

In addition, the ALJ considered Plaintiff's own reports regarding her activities and limitations, and found that:

> [Plaintiff's] own subjective reports of symptom intensity, persistence, and limiting effects do not support her allegations of disabling limitations. The claimant is independent in her personal hygiene and dressing. The claimant prepares simple meals for herself. The claimant lives with her boyfriend. She does chores around her apartment including sweeping, loading the dishwasher, packing her boyfriend's lunch, and assisting with loading the clothes washer. She initially testified that she does not shop for groceries by herself, but later clarified that she can perform small shopping trips to purchase one or two items by herself, with her most recent shopping trip of this nature occurring approximately two weeks prior to her hearing. She independently manages her personal finances. The claimant drives. For enjoyment, she watches television, plays games on her smartphone, colors, and reads.

(Tr. at 38-39) (internal citations to record omitted). The ALJ also noted Plaintiff's initial allegation of "disability due to 'scoliosis, sciatica nerve, and slow learning.'" (Tr. at 35.) This is consistent with Plaintiff's function reports, as outlined by the ALJ above, which do not mention any disability or limitations based on headaches. (Tr. at 223-30, 239-46, 253-60.)

Overall, the ALJ summarized the evidence relating to Plaintiff's headache impairment as follows:

> [Plaintiff] experiences headaches including migraine headaches. Her primary care provider has prescribed a number of medications for these headaches, with some improvement. She also consulted with a neurologist, who referred her for a sleep study that was negative. Despite her impairments, [Plaintiff] is independent in her personal care, does some household chores, packs her boyfriend's lunch, goes on short grocery shopping trips, independently manages her personal finances, periodically drives, watches television, plays games on her smartphone, colors, and reads. Taking the entirety of the evidence into consideration, [Plaintiff] is limited to no greater degree than that assessed in the above residual functional capacity.

(Tr. at 40.)

Plaintiff, who bears the burden of proving disability, presents no evidence, other than her own testimony, that her headaches would cause any specific work limitations. The ALJ appears to have given Plaintiff the benefit of the doubt by including a noise restriction in the RFC. Having done so, the ALJ was not required to include further restrictions regarding light and time off task given the lack of support for such limitations, as well as contrary evidence, including Plaintiff's treatment history and activities.[6] Similarly, Plaintiff's argument that migraines would cause her to miss two or more days of work per month, and therefore would be disabling, amounts to nothing more than conjecture. In fact, Plaintiff herself never testified that she would require such a restriction. Moreover, none of Plaintiff's providers or other medical sources opined that Plaintiff's headaches caused any limitations at all during the time period in question.

In her Reply Brief, Plaintiff relies on the Fourth Circuit's recent decision in Shelley C. v. Commissioner of Social Security Administration, 61 F.4th 341, 361-62 (4th Cir. 2023), in which the Court affirmed and clarified its previous holding Arakas. Specifically, in Shelley C., the Fourth Circuit held that the

---

[6] With regard to the noise limitation, the Court notes that from the ALJ's questioning of the Vocational Expert (Tr. at 74-75), it is apparent that the ALJ was addressing each of the categories of potential environmental conditions set out in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendx D, and in reviewing those categories included the limitation to only "moderate" noise. See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles Appendix D ("Environmental Condition components within the USES Occupational Analysis Program provide a systematic means to describe fourteen possible surroundings or settings in which the occupation is found or the job may be performed" specifically: 1. Exposure To Weather, 2. Extreme Cold, 3. Extreme Heat, 4. Wet And/Or Humid, 5. Noise Intensity Level, 6. Vibration, 7. Atmospheric Conditions, 8. Proximity To Moving Mechanical Parts, 9. Exposure To Electrical Shock, 10. Working In High, Exposed Places, 11. Exposure To Radiation, 12. Working With Explosives, 13. Exposure To Toxic, Caustic Chemicals, 14. Other Environmental Conditions).

12

> symptoms of [major depression], like those of fibromyalgia, are *"entirely subjective,"* determined on a case-by-case basis. Arakas, 983 F.3d at 96 (emphasis added). Ultimately, because of the unique and subjective nature of [major depression], subjective statements from claimants "should be treated as evidence *substantiating* the claimant's impairment." Id. at 97–98.

Shelley C., 61 F.4th at 361-62. Plaintiff now argues that migraine headaches, like fibromyalgia and depression, consists of "entirely subjective" symptoms, and as such, the ALJ "should not rely upon the absence of objective medical evidence to discredit [Plaintiff's] symptom[]" testimony. (Pl.'s Reply [Doc. #15] at 1.) However, in the present case, the ALJ did not rely upon the absence of objective evidence alone to discount Plaintiff's symptoms. Rather, the ALJ cited Plaintiff's conservative treatment, her symptomatic improvement as documented in the treatment records, and her continuing ability to perform a variety of daily activities. (Tr. at 38-40.) As set out above, the ALJ also noted Plaintiff's ability to work prior to her alleged onset date, despite a long history of migraines and other headaches, and Plaintiff's failure to fully comply with medical treatment recommendations, including medication usage, follow-up appointments, and maintaining a sleep schedule. (See Tr. at 36-39.) Accordingly, this is not a scenario in which the ALJ failed "to assess [the] claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Here, the ALJ included Plaintiff's migraines among her severe impairments, crafted the RFC to account for her credibly established limitations, and explained the omission of additional limitations in accordance with the regulations and relevant case law, including Arakas. Substantial evidence therefore supports this ALJ's determination.

Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and clearly explained the reasons for his determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dipositive Brief [Doc. #11] is DENIED, that Defendant's Dispositive Brief [Doc. #13] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 15th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

14

Case 1:22-cv-00793-JEP   Document 16   Filed 03/15/24   Page 14 of 14